IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

JOANGELA E. KING,

                                    Plaintiff,

vs.

ANDREW M. SAUL, Commissioner of
the Social Security Administration,

                                    Defendant.

**8:19-CV-314**

**MEMORANDUM AND ORDER**

Petitioner, JoAngela E. King, filed suit against the Commissioner of the Social Security Administration ("the Commissioner") seeking to reverse, or in the alternative, remand the Commissioner's final decision denying King's claim for disability benefits. Filing 1. The Government seeks to affirm the Commissioner's decision. Filing 10. For the reasons stated below, the Court grants the Commissioner's motion and denies King's motion.

## I. BACKGROUND

King was born in 1960 and has had hearing loss since childhood. Tr. 73, 1075. She was later diagnosed with bilateral sensorineural hearing loss, which began to significantly worsen starting in 2001. Tr. 36, 90, 1071, 1075. King holds at least a GED, is able to communicate in English, and has had past relevant work running a temporary employment agency. Tr. 868, 1107, 1280, 1314. She was forty-seven at the time of her alleged onset date of December 31, 2007, and fifty-seven at the time of her last administrative hearing on August 28, 2018. Tr. 31-32.

The previous proceedings with the Administrative Law Judge (ALJ) and the Social Security Appeals Council determined King was disabled as of September 5, 2014, which was fully favorable to King with regard to her claim for supplemental security income benefits. Tr. 31. That

1

holding stands and is not at issue in this order. Tr. 38. However, this Court reviews King's denied applications for disability-insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423 ("Title II").

## A. Procedural History

King applied for disability-insurance benefits under Title II on March 8, 2013, with an alleged onset date of December 31, 2007.[1] Tr. 32, 481. She later filed a claim for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. § 1383 ("Title XVI"), on September 5, 2014. Tr. 103.

The Commissioner denied King's Title II claim on May 9, 2013, Tr. 114, and upon reconsideration on July 18, 2013, Tr. 119. Pursuant to 20 C.F.R. § 404.929, King submitted a timely request for a hearing before an ALJ on September 5, 2013. Tr. 128-29. King then appeared before ALJ J. Doug Wolfe on three occasions (September 2014, February 2015, and June 2015). Tr. 85, 95. King testified during the February 2015 and June 2015 hearings. Tr. 85. In addition to King's testimony at the February 2015 hearing, Peter R. DeMarco, M.D., an impartial medical expert, and Theresa Wolford, an impartial vocational expert, testified. Tr. 85. Dr. DeMarco and Gail F. Leonhardt, another impartial vocational expert, testified at the final hearing in June 2015. Tr. 85. ALJ Wolfe then issued a fully favorable decision on King's Title II claim on August 12, 2015, finding her disabled beginning on December 31, 2007. Tr. 94.

### 1. Appeals Council Remand

King was notified on October 9, 2015, that the ALJ's favorable decision was being reviewed by the Appeals Council. Tr. 244. The Appeals Council adopted the ALJ's finding of

---

[1] King's application for disability-insurance benefits stated she had an alleged onset date of August 1, 1971, Tr. 481, with an amended alleged onset date of August 1, 1978, Tr. 488. However, the decision of the first ALJ, ALJ Wolfe, on August 12, 2015, stated that King was alleging disability since December 31, 2007. Tr. 85.

disability beginning on September 5, 2014, which was King's Title XVI supplemental security income filing date. Tr. 248. Thus, the ALJ's favorable decision finding a disability beginning on September 5, 2014 entitling her to supplemental security income stands will not be addressed by this Court.[2]

However, the Appeals Council also found that the ALJ's findings on King's Title II claim, finding King to be disabled as of December 31, 2007, were not supported by substantial evidence. Tr. 105, 245, 249. The medical evidence did not support the residual functional capacity ("RFC") on or before December 31, 2007, which was both King's established onset date and date last insured. Tr. 105, 245. Under its authority pursuant to 20 C.F.R. §§ 404.977 and 416.1477, the Appeals Council vacated the ALJ's decision and remanded King's Title II claim back to an ALJ with the following instructions:

> Obtain additional evidence concerning the claimant's bilateral moderate to severe sloping sensorineural hearing loss; depressive disorder, not otherwise specified; and anxiety due to hearing loss in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512-13).

> Further consider the claimant's date last insured, including the information regarding the claimant's work activity for the years 2002-2006, and, if necessary, obtain tax returns and/or W-2 forms, and determine the date last insured.

> Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and Social Security Ruling 85-16 and 96-8p).

> If necessary, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 85-15). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence

---

[2] King does not seek review of her Title XVI benefits. *See generally* Filing 30.

provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

Tr. 108.

### 2. *The ALJ's Six Hearings on Remand*

Following the remand order from the Appeals Council, a total of six hearings were held before ALJ Lahners. Tr. 50, 1312, 1323, 1340, 1362, 1368. Prior to the first hearing, King wrote two letters to ALJ Wolfe, seeking assistance in subpoenaing IRS tax returns for the years 2002 through 2006. Tr. 810-11. Realizing that ALJ Wolfe no longer presided over the case, King sent a third letter to ALJ Lahners to which she attached her previous communications to ALJ Wolfe. Tr. 807. In the letter to ALJ Lahners, King stated that she was able to request the IRS documents with personal funds but that she was having difficulty locating counsel. Tr. 807.

At the first hearing post-remand on July 5, 2016, King appeared unrepresented by counsel. Tr. 1314. The ALJ continued the hearing to allow King additional time to obtain counsel. Tr. 1318-19. On February 9, 2017, the ALJ held a second hearing at which King was again unrepresented by counsel. Tr. 1325. After a discussion on what was needed to extend King's date last insured, Tr. 1326-32, 1336, the ALJ granted King another continuance to locate counsel, Tr. 1337.

On May 30, 2017, King appeared with counsel. Tr. 1342. After another discussion regarding her need to obtain additional medical and tax documentation to develop the record, Tr. 1343-57, the ALJ "continue[d] the matter for one last time" for King to furnish medical and other evidence relating to King's date last insured. Tr. 1359-60. On August 22, 2017, King—through counsel—sent a letter to the ALJ, summarizing the evidence she had collected and requesting a subpoena for the records of King's business and personal accountants; records from First National Bank of Omaha; Nebraska Department of Revenue records; and documents from her medical

providers. Tr. 388-89. The Social Security Administration received the letter on September 1, 2017, but the record does not reveal whether the ALJ took any action on the subpoena requests. Tr. 388-89. On September 12, 2017, the ALJ held a fourth hearing at which King's counsel requested to withdraw his representation. Tr. 1364-65. The ALJ granted his request and continued the hearing for King to obtain new representation and record evidence. Tr. 1366.

At the fifth hearing on April 26, 2018, King appeared with new counsel. Tr. 1370. After receiving additional medical evidence, Tr. 1372, the ALJ granted King an additional continuance to gather evidence that would extend her date last insured and to allow her to submit medical evidence that related to her "depression issues." Tr. 1374-76. However, the ALJ warned that "next time this case is scheduled, we just have to go forward." Tr. 1376. On August 28, 2018, the ALJ held a final hearing where King submitted IRS transcripts for the years 2003 through 2006. Tr. 52-53. When asked if there was any other medical evidence, King—through counsel—responded that with regard to the years 2007 through 2009, she did not "know that there is any updated medical records that would be real relevant . . . but we have - - we've tried to fill in the record, and that was at the last hearing with regard to medical records." Tr. 59-60. The ALJ stated that he would send the IRS documentation to the Social Security Administration for recomputation and order that King have a consultative examination to supplement the medical reports. Tr. 61. He also requested King furnish a brief outlining the new date last insured and why the medical evidence supported a determination of disability and ordered she provide current medical records "[t]o see if there's a continuing disability." Tr. 61.

Thereafter, the ALJ issued an unfavorable decision on September 12, 2018, finding King not disabled as to her Title II claim. Tr. 28, 38. As stated above, the Appeals Council declined King's request for review. Tr. 1.

*3.   The ALJ's Findings and Analysis*

An ALJ is required to follow a five-step sequential analysis to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a); *see also Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) ("During the five-step process, the ALJ considers (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work." (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004))). The ALJ must continue the analysis until the claimant is found to be "not disabled" at steps one, two, four or five, or is found to be "disabled" at step three or step five. *See* 20 C.F.R. § 404.1520(a). The ALJ followed this required analysis when assessing King's claim on remand.

The ALJ concluded that King met the insured-status requirements of the Social Security Act through her date last insured, which the ALJ concluded was December 31, 2008. Tr. 34. "In order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status." *Pyland v. Apfel*, 149 F.3d 873, 876 (8th Cir. 1998) (citing 42 U.S.C. §§ 416(i), 423(c)). King alleged disability starting on December 31, 2007. Tr. 32. Under the prior record, King only had taxable earnings through 2001 with a gap from 2002 through 2006, before reporting taxable earnings again in 2007. Tr. 34. King therefore needed to prove disability on or before December 31, 2007. However, additional record evidence showed that King had Federal Insurance Contributions Act ("FICA") tax earnings in 2002—which extended her date last insured to December 31, 2008. Tr. 34. The ALJ found King elected to take her company's earnings as passive income in 2006, and in doing so, she did not pay FICA taxes

6

on her income. Tr. 35. Additionally, there was no evidence that King paid FICA taxes or Self-Employment Contribution Act taxes from 2003 through 2006 which would establish insured status nor did the ALJ find any W-2s for those years. Tr. 35. The evidence thus did not establish insured status from 2003 through 2006, and as such, the ALJ concluded that King was required to establish disability on or before December 31, 2008, to qualify for Title II benefits. Tr. 35.

Step one requires the ALJ to determine whether the claimant is currently engaged in substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), (b). The ALJ determined King was not engaged in any substantial gainful activity from her onset date of December 31, 2007, through her date last insured of December 31, 2008.

Step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. § 404.1520(c). A "severe impairment" is an impairment or combination of impairments that significantly limits the claimant's ability to perform "basic work activities," 20 C.F.R. §§ 404.1520(a)(4)(ii), & (c), and satisfies the "duration requirement." 20 C.F.R. § 404.1509 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."). Basic work activities include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing, and speaking"; "[u]nderstanding, carrying out, and remembering simple instructions"; "[u]se of judgment"; "[r]esponding appropriately to supervision, co-workers and usual work situations"; and "[d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1522. If the claimant cannot prove such an impairment, the ALJ will find that the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), (c).

The ALJ determined that King had bilateral sensorineural hearing loss through her date last insured. Tr. 35. He did not find King's depressive disorder or anxiety to be a medically

7

determinable impairment since there was no evidence to support these impairments prior to her date last insured. Tr. 35. The ALJ concluded that King did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for twelve consecutive months, and she therefore did not have a severe impairment or combination of impairments prior to December 31, 2008. Tr. 35-36. Since King did not have a severe impairment, the ALJ concluded that she was not disabled from her onset date to her date last insured. Tr. 38.

In reaching his conclusion, the ALJ followed a two-step process for considering King's symptoms. Tr. 36. In step one, an ALJ determines whether the claimant has a medically determinable impairment that can reasonably be expected to cause the claimant's alleged symptoms. *See* SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017). A claimant's subjective complaints alone are not sufficient to satisfy this first inquiry; there must be objective medical evidence in the record that can reasonably be expected to cause the alleged symptoms. SSR 16-3p (S.S.A. Oct. 25, 2017); *see also* 20 C.F.R § 404.1529(a). Second, an ALJ measures the intensity, persistence, and limiting effects of the claimant's symptoms to "determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." SSR 16-3p (S.S.A. Oct. 25, 2017); *see also* § 404.1529(a). The ALJ evaluates the objective medical evidence against the claimant's subjective complaints. SSR 16-3p (S.S.A. Oct. 25, 2017).

Upon consideration of the record evidence, the ALJ found that King's bilateral sensorineural hearing loss could reasonably be expected to cause the alleged symptoms. Tr. 36. However, the ALJ found King's statements on the intensity, persistence, and limiting effects of her symptoms were not "entirely consistent with the medical evidence and other evidence in the record." Tr. 37. According to the ALJ, the record showed a later worsening of King's hearing loss and there was little medical evidence to support more than a minimal functional limitation before

8

or during the relevant period. Tr. 37. Additionally, although King testified that she gave up her business due to hearing loss, the record indicated an alternative explanation. Tr. 27; *see also* Tr. 955-56 (referring to Caroline G. Sedlacek, Ph.D., P.C., noting in a psychological evaluation that King's business ended in 2007 "due to the economy and a long lawsuit").

The ALJ stated that the record did not support more than minimal limitation prior to King's onset date of December 31, 2007. Tr. 37. Before her onset date, King had been diagnosed with bilateral sensorineural hearing loss. Tr. 37, 90, 1071, 1075. The ALJ noted, as an example, that King asked Joel Edwards, CCC-A (Certificate of Clinical Competence in Audiology), in July 2007 about getting hearing aids for "something to help [with the] back ground noise." Tr. 37, 924. The record also indicates King had eighty percent and seventy-six percent speech discrimination in her right and left ears respectively in July 2001. Tr. 1069. The record also shows that King used hearing aids on several occasions before December 31, 2007. Tr. 1059 (showing that King dropped off hearing aids in 2005 for cleaning and checking); Tr. 1062 (indicating that King dropped off hearing aids for fixing in 2004).

In evaluating the evidence from the relevant period, the ALJ found no more than minimal limitation prior to King's date last insured. Tr. 37. A treatment note from Katherine A. Prinz, M.D., in April 2008 revealed that King's left hearing aid needed some repair. Tr. 37, 923. In July 2008, Edwards found that King's hearing thresholds "have decreased since her last test," Tr. 37, 899-900, and opined that King's previous hearing aids were no longer sufficient. Tr. 900. That same month, Dr. Prinz noted that King was getting new hearing aids, was off balance lately with no vertigo, and could proceed with hearing aid fitting. Tr. 920. The ALJ noted, however, that King had been wearing hearing aids since at least 2005, Tr. 38, and "clearly had been able to work with her hearing impairment in the past." Tr. 37. In September 2008, King had a follow-up examination

with Edwards where he showed her how to use, maintain, and take care of her hearing aids. Tr. 912. He noted King successfully used the phone at the office that day. Tr. 37, 912. The progress note also indicated that the "verification of real ear hearing aid performance" test was successful and suggested good target gain. Tr. 912. In November 2008, Edwards performed the abovementioned exam on King again, and it indicated "good target gain as measured in the patient's ear canal." Tr. 37, 901. Additionally, the ALJ found that other physicians' treatment records from the time in question did not indicate any difficulty interacting with King. Tr. 37, *see generally* Tr. 929-31. In light of this evidence, the ALJ noted that King's hearing—with hearing aids—was not causing significant functional difficulty. Tr. 37.

In April 2010, King's speech recognition threshold was reduced to forty percent in her right ear and thirty-five percent in her left ear. Tr. 37, 899. Edwards reported that King's thresholds were stable, but her speech discrimination had slightly decreased from two years ago. Tr. 897. Dr. Prinz noted in May 2010 that "[King] seem[ed] to hear me fine" when her hearing aids were adjusted to a new threshold. Tr. 37, 894. Dr. Sedlacek indicated in September 2011 that King was performing volunteer work with the Urban League for approximately thirty hours a week. Tr. 37, 1311. A progress note from Edwards in March 2012 stated that King requested to fix her right hearing aid, and she had clear canals with no unusual amount of cerumen. Tr. 891. The ALJ concluded that the medical evidence and other evidence after King's date last insured confirmed that her hearing did not cause more than minimal limitation. Tr. 37.

The ALJ also addressed Dr. Prinz's letter dated February 22, 2016, wherein she stated that King showed significant moderate sloping to profound sensorineural loss in both ears in July 2007. Tr. 38, 1109. She went on to state in the letter that King's speech reception threshold was forty-five in her right ear, thirty in her left ear, and King had discrimination scores of sixty-eight percent

10

and fifty-two percent in her right and left ears respectively. Tr. 1109. However, after reviewing Dr. Prinz's 2016 letter and treatment records, the ALJ found that they were referring to April 2010, not July 2007.[3] Tr. 37, 899.

After reviewing the medical evidence before, during, and after the relevant time-frame, and in concluding his step two analysis, the ALJ determined that King did not have severe functional limitations due to her bilateral sensorineural hearing loss from her onset date to her date last insured, which was determined to be December 31, 2008, Tr. 35, and was therefore not disabled as defined by 20 C.F.R. § 404.1520(c). Tr. 38.

In summary, the ALJ concluded that "the claimant has been disabled under section 1614(a)(3)(A) of the Social Security act beginning on September 5, 2014," but not prior to September 5, 2014. Tr. 38. The ALJ further concluded King was not disabled "under sections 216(i) and 223(d) of the Social Security Act" through the date of the ALJ's decision, which was September 12, 2018. Tr. 38.

## II. DISCUSSION

### A. Standard of Review

The Court reviews a denial of benefits by the Commissioner to determine whether the denial is supported by substantial evidence on the record as a whole. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011) (citing 42 U.S.C. § 405(g)). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion." *Id.* (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). The Court must consider evidence that both supports and detracts from the ALJ's decision and will not reverse an

---

[3] The Court finds that neither the ALJ nor Dr. Prinz's statements concerning King's speech reception threshold and discrimination scores is correct. On inspection, the record is lacking any evidence that supports Dr. Prinz's February 2016 letter.

administrative decision simply because some evidence may support the opposite conclusion. *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011). "If, after reviewing the record, the [C]ourt finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the [C]ourt must affirm the ALJ's decision." *Id.* (quoting *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009)). The Court should not reverse merely because it would have decided differently. *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010). The Eighth Circuit has held that a court should "defer heavily to the findings and conclusions of the Social Security Administration." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010).

Additionally, the Court must determine whether the Commissioner's decision "is based on legal error." *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011) (quoting *Lowe v. Apfel*, 226 F.3d 969, 971 (8th Cir. 2000)). "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Id.* (citing *Brueggemann v. Barnhart*, 348 F.3d 689, 692 (8th Cir. 2003); *Nettles v. Schweiker*, 714 F.2d 833, 836 (8th Cir. 1983)). No deference is owed to the Commissioner's legal conclusions. *Brueggemann*, 348 F.3d at 692 (stating that allegations of legal error are reviewed de novo).

## B.  Analysis

Kings argues that the ALJ 1) failed to fully and fairly develop the record as required by the Appeals Council remand order and acted with indifference, Filing 30 at 3, 12, 18-19; 2) issued a decision which was not supported by substantial evidence, Filing 30 at 3, 20, 24; and 3) violated her due process rights by failing to give her an opportunity to testify at the remand hearings, Filing 30 at 3, 25-26. King seeks to reverse the Commissioner's final decision and remand the matter back to the Commissioner for further proceedings. Filing 30 at 26. The Court finds these arguments unpersuasive as discussed below.

    *1.   The ALJ Fully and Fairly Developed the Record*

King first argues that the ALJ erred by not fully and fairly developing the record on remand from the Appeals Council. Specifically, King argues the ALJ (1) failed to follow the remand instructions from the Appeals Council; (2) did not issue subpoenas when requested; (3) failed to understand his responsibilities in developing a full and fair record; and (4) acted with indifference in not providing a full and fair hearing. *See* Filing 30. The Court finds there is substantial evidence that the ALJ understood and factored in the Appeals Council remand orders and ultimately developed the record fully and fairly.

"A disability claimant is entitled to a full and fair hearing under the Social Security Act." *Jones v. Astrue*, 619 F.3d 963, 969 (8th Cir. 2010) (quoting *Halverson v. Astrue*, 600 F.3d 922, 933 (8th Cir. 2010); *see also Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000) (citations omitted) (finding that it is the ALJ's duty to fully and fairly develop the record even when the claimant is represented by counsel). Furthermore, the ALJ must neutrally develop the facts. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) (citing *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). However, a claimant maintains the burden of persuasion to prove disability, *id.* (citing *Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004), and is in a better position to provide information about his or her own medical condition, *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5, 96 L. Ed. 2d 119 (1987). "[An ALJ] acts as an examiner charged with developing the facts." *Richardson v. Perales*, 402 U.S. 389, 410, 91 S. Ct. 1420, 1432, 28 L. Ed. 2d 842 (1971). When examining whether an ALJ has developed the record, there is no bright line rule; those questions are determined on a case-by-case-case basis. *See Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citations omitted).

    a.   The ALJ Fully Complied with the Remand Order Instructions

King argues first that the ALJ "never intended to consider or did not understand that he was obligated to consider," Filing 30 at 15, the Appeals Council remand order instructing him to: obtain additional evidence on King's bilateral moderate to severe sloping sensorineural hearing loss, depression, and anxiety; consider King's date last insured, and if necessary, "obtain tax returns and/or W-2 forms"; consider King's residual functional capacity and provide a basis that supports that finding; and obtain evidence from a vocational expert if necessary. *See* Tr. 108. As stated above, the Court finds the ALJ complied with the remand instructions from the Appeals Council.

"The administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977. The ALJ followed § 404.977 for obtaining medical evidence and considering King's date last insured. Tr. 34-38. In particular, the ALJ held six hearings where he obtained or allowed King to present additional evidence related to her date last insured and alleged disability impairments. *See* Tr. 52-53 (King's counsel presenting additional IRS transcripts for the years 2003 through 2006); Tr. 59-60 (King's counsel stating there are no more relevant medical records from 2007 through 2009 at the sixth hearing); Tr. 1315-16 (ALJ collecting multiple exhibits from King at first hearing); Tr. 1326 (King providing income transcripts from IRS from 2001 to 2006 at the second hearing); Tr. 1343 (King's counsel presenting IRS account transcript at the third hearing); Tr. 1371 (King's counsel confirming she faxed over session notes from Dr. Sedlacek at fifth hearing); Tr. 1372 (noting that exhibits 1A through 26F were received into evidence). Since the ALJ found King not disabled under step two of the disability-determination analysis, Tr. 35-36, he was not required to consider her maximum residual functional capacity or

seek additional testimony from a vocational expert. Tr. 108; *see* 20 C.F.R. §§ 404.1520(a)(4)(ii), (c).

Although the ALJ has a general duty to fully and fairly develop the record, *see, e.g.*, *Nevland*, 204 F.3d at 857, the Commissioner is correct in stating that King still maintains the burden to produce additional evidence and has the "responsibility for presenting the strongest case possible." 20 C.F.R. § 404.1512(a); *Mouser*, 545 F.3d at 637 (quoting *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991)). Furthermore, when a claimant is represented by counsel, 20 C.F.R. § 404.1740(b)(1) directs counsel to "act with reasonable promptness to obtain the information and evidence that the claimant wants to submit in support of his or her claim." Additionally, and although not dispositive, the length of a hearing is a consideration. *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994). As applied to the present action, and unlike in *Battles*—where the claimant's hearing lasted only ten minutes and was transcribed in approximately eleven pages, *id.*—King had over two years and six hearings following remand from the Appeals Council to present her strongest case possible, Tr. 50, 1312, 1323, 1340, 1362, 1368. The ALJ continued the hearing on five occasions for King to obtain counsel or collect additional evidence. Tr. 1318-19, 1337, 1359-60, 1366, 1374-76. The ALJ had a responsibility to develop the record; yet, King also had a responsibility to act with promptness and submit evidence that supported her strongest possible claim.

The Court can remand a case "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). "To be considered material, the new evidence must be 'non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied.'" *Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997) (quoting *Woolf v.*

*Shalala*, 3 F.3d 1210, 1215 (8th Cir. 1993)). "Good cause does not exist when the claimant had the opportunity to obtain the new evidence before the administrative record closed but failed to do so without providing a sufficient explanation." *Hepp v. Astrue*, 511 F.3d 798, 808 (8th Cir. 2008) (citing *Hinchey v. Shalala*, 29 F.3d 428, 433 (8th Cir. 1994)).

King has not pointed to any concrete evidence for which the Court should remand the case. King points out that she was able to locate her 2002 W-2 tax return. Filing 30 at 20. Because she located her 2002 return, she argues her 2003 through 2006 W-2s and tax returns "likely exist" and the case should be remanded for her to attempt to present them. Filing 30 at 20. However, this evidence is not material, nor does King demonstrate good cause for failing to adduce this evidence at the numerous prior proceedings. Filing 30 at 20. King even concedes that whether any other new evidence even exists is "unclear." Filing 30 at 18. Unlike in *Hepp*, where the claimant's new evidence consisted of a 2006 MRI report and a letter from a physician, *Id.*, King has not cited to any new evidence besides her speculative assertion above. *See generally* Filing 30. King insists "she was a wage earner" with her company from 2002 through 2006, Filing 30 at 18, but without pointing this Court in any reasonable direction, we agree with King that whether such evidence exists is "unclear," and she fails to meet the requirement to remand her case back to the ALJ in order to collect additional evidence.

b.  King's Subpoena Requests

King next argues that the ALJ failed to respond to her subpoena requests, which in turn, contravened the Appeals Council directive, Tr. 106, and was an indicator that he failed to fully and fairly develop the record. Filing 30 at 16, 20. King documents two instances of this occurring. Filing 30 at 17-18. First, after her application was remanded back to the ALJ, King incorrectly directed subpoena requests to ALJ Wolfe rather than ALJ Lahners. Tr. 810-11. In her letter to ALJ

Wolfe on February 28, 2016, King requested assistance in subpoenaing records from several entities. Tr. 810. However, in her letter to ALJ Lahners on June 15, 2016, King disclosed that she had been able to request the IRS records herself. Tr. 807. Nowhere in the June 15 letter did King request that ALJ Lahners subpoena those entities. Rather, King explained she was successful in formally requesting the appropriate records. Tr. 807. Thus, there was no failure to issue subpoena's on ALJ Lahners's part.

As to the second instance, King claims her previous counsel requested assistance in getting both financial and medical records on August 22, 2017. Filing 30 at 15-16; Tr. 388. In a letter addressed to ALJ Lahners, King's attorney requested the records from her business and personal accountants; First National Bank of Omaha; Nebraska Department of Revenue; and her medical providers. Tr. 388-89. In her brief, King states "she is at a loss" for obtaining additional evidence since the ALJ failed to assist her in developing the record. Filing 30 at 18. As stated above, there is no indication that the ALJ took any action on the subpoena requests—evidence, according to King, that the ALJ failed to develop the record. Filing 30 at 18. The Court finds King's subpoena request was not properly made and the ALJ therefore did not err in failing to address it.

When it is "reasonably necessary for the full presentation of a case," an ALJ, on his initiative or upon request by a party, may "issue subpoenas for the . . . production of books, records, correspondence, papers, or other documents that are material to an issue at the hearing." 20 C.F.R. § 416.1450(d)(1). Section 416.1450 goes on to state:

> The written request must give the names of the witnesses or documents to be produced; describe the address or location of the witnesses or documents with sufficient detail to find them; state the important facts that the witness or document is expected to prove; and indicate why these facts could not be proven without issuing a subpoena.

20 C.F.R. § 416.1450(d)(2).

Claimants do not have an absolute right to subpoena and cross-examine in social security hearings. *See Passmore v. Astrue*, 533 F.3d 658, 663 (8th Cir. 2008). Furthermore, this Circuit has not been shy about affirming subpoena denials when they do not meet the regulation guidelines above. *See id.* at 666 (holding that the ALJ did not abuse his discretion in rejecting a subpoena request because the claimant "failed to identify, as required by regulation, the important facts that [the consultative physician] was expected to prove or any explanation why these facts could not be proved without a subpoena and cross-examination"); *see also Sulley v. Astrue*, No. 8:08CV297, 2009 WL 703927, at *8-9 (D. Neb. Mar. 16, 2009) (holding that the ALJ did not err in failing to issue a requested subpoena where the claimant did not state important facts demonstrating what the physician's testimony would prove, nor did she explain why those facts could not be proved without a subpoena).

In reviewing King's subpoena request, the Court finds that it was not reasonably necessary for the presentation of her case nor did the request "state the important facts that the witness or document [was] expected to prove." 20 C.F.R. § 416.1540. In the subpoena request, King's counsel stated that King had already provided 293 pages of federal quarterly tax returns, federal tax deposit verification sheets, and IRS documents from 2002 through 2007. Tr. 389. King also recovered thirty-seven pages of withholding documents from the Nebraska Department of Revenue, her company's monthly state withholding and payroll register spreadsheets from 2007, and sixty-nine pages from the Nebraska Department of Labor from 2006 through 2007. Tr. 388-89. In total, the ALJ had in his possession over thirty exhibits relating to Kings date last insured, including record evidence from the IRS from 2001 through 2007. *See* Tr. 42-43. King had the opportunity to address the issue with the ALJ and clarify her subpoena requests on three separate occasions—September 2017, April 2018, August 2018—but failed to do so. *See generally* Tr. 52-66, 1362-78.

Furthermore, at the sixth hearing, King's counsel indicated there was no other evidence regarding her date last insured. Tr. 55-56. The same holds true for the medical evidence.[4] *See* Tr. 59-60 (referring to King's counsel stating that as to the medical records from 2007 through 2009, it does not appear there were any relevant and updated medical records). King also failed to identify the important facts that the four documents were necessary to prove as required by § 416.1540(2). *See* Tr. 388-89. The ALJ had a fully developed record in making his conclusions regarding King's last date insured and King failed to state the pertinent facts in her subpoena request. As such, the Court affirms the ALJ's decision not to issue the requested subpoenas.

 c. The ALJ Understood His Responsibilities

  Thirdly, as it relates to developing the record, King argues the ALJ did not understand his responsibilities on remand from the Appeals Council. Filing 30 at 18. As evidence, King points to certain discussions at the hearings between the ALJ and King's attorney and to the six identical notice-of-hearing documents she received from the ALJ. Filing 30 at 15-16, 18. According to King, the discussions showed the ALJ did not understand his responsibility in developing the record and the identical hearing notices failed to advise her of the relevant issues to be decided. Filing 30 at 15-16. As it pertains to certain discussions between the ALJ and King's attorney, King points to the hearing transcripts where the ALJ stated that it was the attorney's job to develop the record. Filing 30 at 19; Tr. 1345. Additionally, King claims the ALJ made incorrect statements on the procedural process of submitting and recomputing evidence related to her date last insured. Filing 30 at 19; Tr. 53, 56-58. After reviewing the entirety of the hearing transcripts, *see* Tr. 52-66, 1312-78, the Court finds the ALJ fully understood and executed his responsibilities.

---

[4] It also appears the medical records that King's counsel requested in August 22, 2017, were ultimately in evidence at the time of the ALJ's finding. *Compare* Tr. 389 (stating King requested the medical records of Dr. Prinz, Mr. Edwards, Jack Lewis, M.D., and Dr. Doherty), *with* Tr. 47-49 (referring to the ALJ's exhibit list that includes the records of Dr. Prinz, Mr. Edwards, Dr. Lewis, and Dr. Doherty).

As to the six "virtually identical" hearing notices, Tr. 291, 319, 334, 349, 365, 390, 411, 439, 20 C.F.R. § 415.1438 states that the notice of hearing will state the specific issues to be decided in a claimant's case. The hearing notices for September 21, 2016; November 29, 2016; March 6, 2017; June 14, 2017; October 20, 2017; and January 30, 2018, each contained a provision that stated, "[t]his supplemental hearing is being scheduled pursuant to Order of the Appeals Council dated January 4, 2016." Tr. 322, 337, 352, 368, 393, 420. Starting at the third hearing when counsel was present, King had the ability to object to the hearing notices at the beginning of each respective hearing but waived that right.[5] Tr. 52, 1342, 1370-71; *see* § 416.1439 (stating that if a claimant objects to issues to be decided at the hearing, she must inform the ALJ no later than five business days before the hearing); *see also Wilburn v. Astrue*, 626 F.3d 999, 1003 (8th Cir. 2010) (finding claimant was afforded a full and fair hearing and had an opportunity to present her objections to the ALJ or Appeals Council). Furthermore, King and her subsequent attorneys were fully aware of the Appeals Council remand directive and thus were aware of the issues to be decided at the hearings in question. *See* Tr. 96 (letter addressed to King from Appeals Council, remanding case back to ALJ with a full explanation of the issues); Tr. 810-11 (referring to two letters from King to ALJ Wolfe before the first hearing on remand stating that she received notice from Social Security Administration Office of Disability Adjudication and Review that her file was ready for review and needed missing information to complete her file); Tr. 1318 (ALJ discussing remand from Appeals Council with King); Tr. 1346 (ALJ discussing issues on remand with King's counsel).

Accordingly, the Court determines the ALJ was fully aware of King's Title II claim on remand and understood and properly executed his responsibilities.

---

[5] The ALJ did not address the issues set forth in the notice during the fourth hearing on September 12, 2017, since King's counsel formally requested to withdraw from the case at the beginning of the hearing. Tr. 1365.

d.  The ALJ Did Not Act with Indifference or Bias

Fourth, King argues the ALJ acted with indifference in making "unnecessarily coercive" statements.[6] Filing 30 at 21-22. King references the ALJ's statements on May 30, 2017, and August 28, 2018, where he stated to King and her attorney respectively that he could review King's Title XVI claim even though the Appeals Council ruled favorably on the issue. Filing 30 at 21-22. After reviewing the record, the Court finds the ALJ took careful consideration to ensure King had a full and fair hearing and did not act with indifference or bias.

Social Security disability hearings do not require full courtroom proceedings, s*ee Wilburn*, 626 F.3d at 1003, and are non-adversarial, *e.g.*, *Snead*, 360 F.3d at 838 (citations omitted). "There emerges an emphasis upon the informal rather than the formal . . . . [T]hese hearings[] should be understandable to the layman claimant, should not necessarily be stiff and comfortable only for the trained attorney, and should be liberal and not strict in tone and operation." *Richardson*, 402 U.S. at 400-01, 91 S. Ct. at 1427. An ALJ is presumed to be unbiased and a claimant holds the burden to provide sufficient evidence to overcome this burden. *Perkins*, 648 F.3d at 903.

The fact the ALJ addressed procedural issues with King on May 30, 2017, (relating to how an ALJ reviews Appeals Council remands) before she had obtained counsel does not indicate he was making "unnecessarily coercive" statements to King as she claims. Filing 30 at 21. Rather, the ALJ was attempting to make the process understandable to King. "[T]he ALJ possesse[d] no interest in denying benefits" to King, *Snead*, 360 F.3d at 838, and he ensured King understood the disability process in non-legalese terms, *Richardson*, 402 U.S. at 400-01. Accordingly, the ALJ did not act with indifference or bias in developing the record.

---

[6] In her argument that the ALJ acted with indifference in failing to provide a full and fair hearing, King also claims the six identical hearing notices were inadequate. Filing 30 at 21. Since the Court already rejected that argument above, it declines to address it again.

Furthermore, if the ALJ failed to develop the record, a petitioner must show prejudice or unfairness in order to justify remanding the case. *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993). Without a showing of prejudice or unfairness, reversal or remand is unwarranted. *Id.* Evidence is prejudicial if it may alter the outcome in a disability determination. *Snead*, 360 F.3d at 839. In this case, even assuming arguendo King could show the ALJ failed to develop the record, King has not demonstrated that the ALJ failing to request subpoenas, acting with indifference, or failing to understand his responsibilities altered the outcome of the proceedings in any way. There is no indication from King that additional evidence exists that was not made a part of the record. There was substantial evidence to justify the ALJ's findings as set forth below and remedying the supposed minor errors King alleges would have done nothing to sway this result. Accordingly, the ALJ fully and fairly developed the record, King suffered no prejudice or unfairness, and the Court declines to remand the case.

### 2. *Substantial Evidence Exists in the Record*

Since the ALJ fully and fairly developed the record, the Court turns to whether substantial evidence exists in the record to support the ALJ's findings. King argues the ALJ inadequately reviewed the evidence by not considering SSR 83-20. Filing 30 at 23. King specifically refers to the statements of Dr. Doherty, which were not included in the ALJ's findings. Filing 30 at 24. The Court finds there was sufficient evidence in the ALJ's step-two disability determination to support his finding that King's bilateral sensorineural hearing loss did not constitute a severe impairment. The ALJ did not act improperly under SSR 83-20 or by disregarding Dr. Doherty's statements.

"[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994) (citations omitted). An ALJ is not required to produce

additional evidence that is already within the record. *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001).

The ALJ performed his analysis pursuant to 20 C.F.R. §§ 404.1529, 416.929 and SSR 16-3p, finding King's hearing loss could reasonably be expected to cause her alleged symptoms but that the intensity, persistence, and limiting effects of her symptoms were not consistent with the record evidence. Tr. 36-37. The record prior to King's date last insured showed minimal functional limitation according to the ALJ. Tr. 37. The Court agrees since, for example, King noted to Edwards in 2008 that she was able to use the phone successfully with her new hearing aids. Tr. 37, 912. Edwards further stated that King had "good target gain" in a real ear hearing aid performance test. Tr. 912. A follow-up with Edwards indicated that King had good target gain in November 2008. Tr. 37, 901. Other evidence in the record includes King stating she was contemplating getting hearing aids to help with background noise, Tr. 37, 924, that she needed some repair on a hearing aid, Tr. 37, 923, and that a hearing test on July 2008 showed some decrease since her last exam, Tr. 37, 900. In 2011, well after King's date last insured in 2008, Dr. Sedlacek reported that she was volunteering with the Urban League for approximately thirty hours a week and that she could hear well on the phone during an interview. Tr. 37, 1308, 1311. Lastly, although the ALJ stated that King reported having to give up her business due to hearing loss, Tr. 37, Dr. Sedlacek reported in an initial psychological evaluation that King's business ended in 2007 "due to the economy and a long lawsuit." Tr. 956. With the foregoing evidence, and because King has failed her disability burden, *see Stormo*, 377 F.3d at 806, the Court finds the ALJ's holding is supported by substantial evidence. The ALJ provided a sufficient basis for making his conclusions where a "reasonable mind would find it adequate to support the conclusion." *Teague*, 638 F.3d at 614 (quoting *Finch*, 547 F.3d at 935). And as stated above, King has cited to no more medical or other

evidence that would further supplement the record. *See Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995) (failing to develop the record is cause for reversal only when such failure is unfair or prejudicial (citing *Onstad*, 999 F.2d at 1234)).

King also argues that the ALJ inadequately reviewed the evidence by neglecting to consider SSR 83-20—which was in effect at the time of the ALJ's decision. Filing 30 at 22-25.[7] SSR 83-20 was a ruling that helped determine a claimant's onset of disability for Title II and Title XVI claims and allowed an ALJ to infer an onset date of impairment prior to the date of the first recorded medical examination in some situations. SSR 83-20, 1983 WL 31249 (S.S.A. 1983). As the Court understands her briefing, King argues the ALJ should have employed SSR 83-20 to find an earlier onset date than December 31, 2007. Filing 30 at. As evidence of this error, according to King, the ALJ disregarded Dr. Doherty's statements from the relevant time to the effect that King had, in fact, suffered significant hearing loss.[8] Filing 30 at 23-24.

Under SSR 83-20, the onset date of disability equals the first day a claimant is disabled. SSR 83-20 (S.S.A. 1983). For a date of onset, an ALJ considers both the claimant's allegations and the specific date an impairment caused the claimant to cease working. SSR 83-20 (S.S.A. 1983). Third, an ALJ looks at medical reports which serve as the primary element in determining an onset date. SSR 83-20 (S.S.A. 1983). The ruling goes on to state that for slowly progressive impairments and when precise evidence is not available, "it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred sometime prior to the date of the first recorded medical examination." SSR 83-20 (S.S.A. 1983). Furthermore,

---

[7] SSR 83-20 was rescinded and replaced by SSR 18-1p and SSR 18-2p on October 2, 2018. However, because it was in effect at the time the ALJ decided King's case, the Court proceeds to analyze whether the ALJ properly followed SSR 83-20.

[8] King further argues that the ALJ ignored subpoena requests for medical providers. Filing 30 at 23. This argument is discussed and rejected above in a Section II.B.1.b.

"[i]f reasonable inferences about the progression of the impairment cannot be made on the basis of the evidence in file and additional relevant medical evidence is not available, it may be necessary to explore other sources of documentation." SSR 83-20 (S.S.A. 1983). An ALJ should in that case request that a medical advisor appear and/or obtain information from family members, friends, and former employers to collect additional evidence on the claimant's condition. SSR 83-20 (S.S.A. 1983). When determining whether SSR 83-20 is applicable, the Eighth Circuit held that "[i]f the medical evidence is ambiguous and a retroactive inference is necessary, SSR 83-20 requires the ALJ to call upon the services of a medical advisor to insure that the determination of onset is based upon a 'legitimate medical basis.'" *Grebenick v. Chater*, 121 F.3d 1193, 1201 (8th Cir. 1997) (citations omitted).

King alleged an onset date of December 31, 2007—which was also the last date she engaged in substantial gainful activity. Tr. 32, 35. She argued the ALJ should have looked beyond the medical evidence and explored other sources of documentation in accordance with SSR 83-20. Filing 30 at 24. In *Grebenick*, the Court found that since the appropriate medical records showed that the claimant's symptoms failed to meet listing criteria in 1983 and 1984, it left no doubt that she failed to meet listing level in 1982. *Id.* The claimant's medical evidence was unambiguous, and a medical advisor was not needed. *Id.* Similarly, the evidence in King's record is neither ambiguous nor did it require the ALJ to have called on a medical advisor at the hearings. The medical records, as discussed above, do not support a finding that King had a significant impairment during or before her onset date. The record indicates a later worsening of King's hearing loss after her date last insured. King's reliance on SSR 83-20 is misplaced. The ALJ determined King was not disabled prior to her date last insured and determining an earlier onset date was not applicable. *See Scheck v. Barnhart*, 357 F.3d 697, 701 (7th Cir. 2004) (finding that

since the ALJ found claimant not disabled, there was no need to locate an earlier onset date and SSR 83-20 did not apply).

As it concerns Dr. Doherty's letter in April 2018—which stated that King had developed significant hearing loss over the years and therefore "had to quit working as she is now to the point she cannot hear or speak clearly," Tr. 1247—the Court finds that since SSR 83-20 did not apply, King's argument that the ALJ needed to consider other sources of documentation fails. SSR 83-20 (S.S.A. 1983). Additionally, Dr. Doherty's statement was from April 2018, approximately nine years after King's date last insured. Tr. 1247. Furthermore, she did not treat King for hearing loss or depression, and her earliest known treatment records go back only to 2013—well after King's date last insured. Tr. 1246-74.

In conclusion, the Court finds the ALJ's determination was supported by substantial evidence. Additionally, the ALJ did not need to append SSR 83-20 into his analysis.

### 3.   The ALJ Did Not Violate King's Due Process Rights

Lasty, King argues the ALJ violated her due process rights when he failed to give her the opportunity to testify at the hearings on remand from the Appeals Council. Filing 30 at 23. In essence, King claims she was denied an opportunity to be heard. Filing 20 at 23. King claims that, although she did not testify at any of the six hearings held on remand, she believed there would be a seventh hearing and intended to testify then. Filing 30 at 25. Assuming without deciding that the Due Process Clause applies,[9] the Court concludes the ALJ did not violate King's due process rights.

---

[9] In *Richardson*, the Supreme Court assumed the Due Process Clause applied to social security disability hearings without ruling on whether the claimant had a property interest. *Richardson*, 402 U.S. at 401-02, 91 S. Ct. at 1427. Although this Circuit has not taken a position on the property interest question, it has nonetheless assumed due process applies. *Hepp*, 511 F.3d at 804 n.5.

"Social security disability applicants are entitled to a full and fair hearing, and a hearing which is 'non-adversarial and therefore do[es] not require full courtroom procedures.'" *Wilburn*, 626 F.3d at 1003 (alteration in original) (quoting *Hepp*, 511 F.3d at 804). Due process is a flexible concept that depends on individual circumstances. *See Bliek v. Palmer*, 102 F.3d 1472, 1475 (8th Cir. 1997) (citing *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14 n.15, 98 S. Ct. 1554, 1563, n.15, 56 L. Ed. 2d 30 (1978). 20 C.F.R § 404.977(a)(b) further states:

> The Appeals Council may remand a case to an administrative law judge so that he may hold a hearing and issue a decision or a recommended decision. The Appeals Council may also remand a case in which additional evidence is needed or additional action by the administrative law judge is required.
>
> . . . The administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order.

As set forth in detail above, the ALJ fully complied with the Appeals Council remand order, taking into account its instructions. Tr. 31-32, 108. On remand, the ALJ possessed a more constrained role to revisit and obtain, if necessary, limited evidence as instructed by the Appeals Council. Although the ALJ was able to "take any further action needed to complete the administrative record," Tr. 108, this catch-all phrase did not require him to undertake any particular steps beyond those specifically enumerated in the remand order. Importantly, King was never prohibited from testifying and she had over six hearings at which she could have asked to be heard if she so desired. Tr. 50, 1312, 1323, 1340, 1362, 1368. The fact the seventh hearing never came to fruition did not deny King her opportunity to testify as she claims. King's assertion she intended to testify is mere conjecture and she points to nothing in the record that indicates she wanted to testify but was unable to do so. *See generally* 50-66, 1312-78.

Furthermore, since King cites to no legal authority on the issue, her argument can be "rejected out of hand." *See Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005) (holding

that claimant "provides no analysis of the relevant law or facts" to support her assertion). The *Adams* Court held that when raising an issue on appeal, "a plaintiff is required to provide at least some analysis or argument supporting his or her claim that the ALJ erred." *Adams v. Astrue*, No. CIV. 4:07-CV-04030, 2007 WL 4557803, at *4 (W.D. Ark. Dec. 20, 2007) (emphasis in original) (citations omitted). Accordingly, the Court concludes King's due process rights were not violated on remand to the ALJ.

### III. CONCLUSION

For the foregoing reasons, the Court finds the Commissioner's final decision denying King's claim for benefits under the Act should be affirmed.

**IT IS ORDERED:**

1.  The Commissioner's Motion for an Order Affirming the Commissioner's Decision (Filing 31) is granted;

2.  Petitioner's Motion for an order Reversing the Commissioner's Decision (Filing 29) is denied;

3.  The Commissioner's final decision is affirmed;

4.  A separate judgment will be entered.

Dated this 20th day of August, 2020.

BY THE COURT:

Brian C. Buescher
United States District Judge

28